*1041 OPINION OF THE COURT
Martin Schneier, J.
The novel primary issue presented in this CPLR article 78 proceeding is whether the determination by the Board of Trustees of the New York City Employees’ Retirement System to deny a former correction officer’s request for an “accident disability retirement” pension based on a meeting of the Board of Trustees where there was no recorded vote on this request is arbitrary, capricious, unreasonable and in violation of the law and, therefore, must be annulled.
This is an issue of first impression in this state.
In this CPLR article 78 proceeding, petitioner, Michael Schlesinger, petitions the court to annul “the action of the respondents herein in denying petitioner a disability retirement pursuant to Retirement and Social Security Law Section 507-c” and declare said action to be arbitrary, capricious, unreasonable and unlawful; and to direct “the respondents to retire petitioner with accident disability retirement pursuant to Retirement and Social Security Law Section 507-c.”
Background
On December 7, 2000, petitioner was appointed a correction officer with the New York City Department of Correction and became a member of the New York City Employees’ Retirement System (NYCERS). On May 19, 2002, petitioner “in an attempt to restrain an inmate” “strained a muscle in the right and left side of his neck,” sustaining a line of duty injury. Petitioner was transferred to Mount Sinai Hospital’s emergency department where he complained of “neck pain.” He was treated and was released. Petitioner returned to full duty at work. Petitioner continued to work full duty until January 2004, when he went on light duty. Petitioner worked light duty until January 2005 when he resumed full duty until September 30, 2005, when he went on medical leave. Petitioner was on medical leave until he was terminated on March 10, 2008 because of his inability to perform the duties of a correction officer.
Petitioner had filed multiple applications alleging that he was disabled as a result of the May 19, 2002 incident. All of these were denied on the grounds that petitioner was not disabled.
On January 9, 2008, petitioner underwent an anterior cervical discectomy and fusion at C5-6 and C6-7 in his neck. On March 20, 2008, petitioner filed his current application for an *1042 “accident disability retirement” (ADR) pension which is the subject of this article 78 proceeding. On July 22, 2008, petitioner appeared before the Medical Board for an interview and examination. The Board’s “Findings and Conclusions” on July 22, 2008 were in relevant part that
“[t]he Medical Board, as previously stated in multiple reports that the first MRI reports that is in possession is that of April 4, 2004 which showed chronic changes and osteophytic disc complexes. “Additionally, the Medical Board notes that the first treating physician’s report that it has received was the initial assessments by Dr. Parisi in March 2004. The Medical Board has noted his previous comments that he was originally seen by Dr. Hecht and states in the interview September 14, 2004 that he was seen approximately nine months following the injury. The Medical Board has made a thorough review of the reports and the entire record and has found no reports from Dr. Hecht despite its previous comments that such information was lacking.
“Medical Board also notes that the films previously provided by Michael Schlesinger were signed out in his last visit. Previous review of such films did not reveal any 2003 MRI.
“The Medical Board now notes that the applicant has a two-level cervical fusion, C5-6 and C-6. Based upon the fusion and continued symptomatology as well as the loss of motion one would expect in such fusion, the applicant is now disabled from performing the duties of a Corrections Officer; however, as previously mentioned, the Medical Board finds no causation to the incident of May 19, 2002 and the applicant’s current disability. As previously mentioned, it does not find that there is contemporaneous documentation to support injuries to his shoulders at that time.
“Therefore, the Medical Board recommends that Michael F. Schlesinger’s application for Disability Retirement under the provisions of Section 507-C be denied.”
The Medical Board was subsequently provided additional documentation, including Dr. Robert L. Hecht’s evaluation of petitioner on March 13, 2003, his follow-up examination of the petitioner on November 19, 2003, and an MRI from November *1043 6, 2003, which showed a herniation at C5-6 and C6-7. The Medical Board reconsidered the petitioner’s application and, on October 28, 2008, determined in its “Findings and Conclusions” in relevant part that
“[t]he Medical Board notes that the documentation now indicates approximately 10 months since the incident of May 19, 2002 and the March 13, 2003 visit document presented from Dr. Hecht’s office. Given the time from treatment and the incident, the Medical Board does not attribute the findings in which the applicant had full range of motion to his current cervical fusion and disability.
“The Medical Board recommends reaffirmation of his previous conclusion to deny his application with Disability Retirement under provision of Section 507-c; again, it does not find causation between the incident of May 19, 2002 and the [applicant’s] complaints.”
On November 13, 2008, petitioner appeared before the NYCERS Board of Trustees. Petitioner explained that he was precluded from seeking treatment earlier because his superiors had lost his paperwork and, as a result, he did not receive a workers’ compensation number for several months. Petitioner also stated that “I assumed the injury would go away,” “[b]ut it got progressively worse.” In addition, petitioner stated that he was afraid to call in sick because he was still on probation.
Petitioner submitted additional documentation consisting of Mount Sinai Hospital’s emergency room record from May 19, 2002. The Medical Board reviewed the record and, on December 16, 2008, concluded in relevant part that
“[tjherefore, the Medical Board finds that this documentation offers no additional information and notes the lack of physical findings and the degree of severity of the injury on the report. The Medical Board notes again and reiterates the time interval between the complaints of neck injury and subsequent treatment; therefore, the Medical Board again fails to find causation with the current disability and the two-level cervical fusion at C5-6 and C6-7.
“Therefore, the Medical Board re-affirms its previous conclusion, recommending denial of his application for Disability Retirement under Section 507-c.”
Petitioner then submitted additional documentation in the form of a ruling by the Social Security Administration finding *1044 that petitioner was disabled. The Medical Board reviewed this ruling and, on January 27, 2009, in its “Findings and Conclusions” determined in relevant part that
“[t]he Medical Board notes that it has already declared Mr. Schlesinger disabled from performing the duties of a Correction Officer with the Department of Correction. The issue regarding the competent causal factor of the disability is not addressed by this documentation, specifically, to substantiate Mr. Schlesinger’s claim that the incident of May 19, 2002 is the competent causal factor.
“Therefore, the Medical Board reaffirms its previous recommendation to deny Michael Schlesinger’s application for Disability Retirement under the provisions of Section 507-c. It does not find that competent causal factor of his disability is the incident of May 19, 2002.”
The Board of Trustees met on February 12, 2009. The material portion of the minutes, submitted as respondents’ exhibit 3, states:
“acting chairperson bratcher: We have two cases laid-over and one remanded, and the first laid-over case is Michael [Schlesinger].
“ms. d’allessandro: Michael [Schlesinger] is a corrections officer with the Department of Corrections, 45-year old, Tier 3, CO20 member with 6.76 years of service credit. The member filed for disability on 3/20/08, pursuant to Section 507 (c), three-quarters, was terminated under Section 7173, effective 3/10/ 08.
“On November 13th, the Board of Trustees meeting, the member presented an appeal, and there was a recommendation of denial of his application before the Board. The case was laid over pending receipt of additional medical records, specifically records from Mount Sinai Hospital of Queens, and any ambulance report. On December 16, 2008 and January 27, 2009 the medical board reviewed the additional documentation that was submitted and reiterated its previous recommendation.
“acting chairperson bratcher: Is there any action on this? All right.”
By letter dated March 22, 2010, the attorney for respondents advised the court that “[u]pon reexamining a complete copy of *1045 the minutes of the February 12, 2009 meeting, I have confirmed that the un-redacted content contained in Exhibit 3 is a complete copy of the relevant discussions regarding petitioner’s case.”
With respect to the procedure employed by the Board of Trustees, the attorney for respondents advised the court that “unless a Board of Trustees’ member makes a motion to retire a member on accident disability, the Board adopts the Medical Board’s recommendation.”
In a letter dated February 13, 2009, the NYCERS executive director wrote a letter to the petitioner which, in relevant part, states:
“Board of Trustees meeting of February 12, 2009.
“Dear Mr. [Schlesinger]:
“You are hereby notified that at its meeting held on the above date, the Board of Trustees adopted a resolution denying your application for Disability Retirement pursuant to Section 507-c of Article 14 of the Retirement and Social Security Law.”
Discussion
Retirement and Social Security Law § 507-c provides in relevant part that
“a. Any member in the uniformed personnel in institutions under the jurisdiction of the New York city department of correction, who becomes physically . . . incapacitated for the performance of duties as the natural and proximate result of an injury, sustained in the performance or discharge of his . . . duties by, or as a natural and proximate result of, an act of any inmate . . . shall be paid a performance of duty disability retirement allowance equal to three-quarters of final average salary . ...”
As explained by the Court of Appeals:
“The award of accidental disability retirement benefits to a NYCERS applicant is a two-step process (see, Administrative Code of City of NY § 13-168 [a]). The first step involves fact finding by the NYCERS Medical Board (see also, Administrative Code § 13-123 [a] [composition of Medical Board]). After conducting its own medical examination of the applicant and considering the evidence submitted in *1046 support of the claim, the Medical Board, as a threshold matter, must certify whether the applicant is actually ‘physically or mentally incapacitated for the performance of city-service.’ (Administrative Code § 13-168 [a].) If the Medical Board concludes that the applicant is disabled, it must then make a recommendation to the Board of Trustees as to whether the disability was ‘a natural and proximate result of an accidental injury received in such city-service’ (id.).
“The second step in the process involves the NYCERS Board of Trustees (see also, Administrative Code § 13-103 [b] [composition of Board of Trustees]). If the Medical Board certifies that the applicant is not medically disabled for duty, the Board of Trustees must accept that determination and deny applicant’s claim. The Board of Trustees is equally bound by a Medical Board finding that the applicant is disabled, but in that event it must then make its own evaluation as to the Medical Board’s recommendation regarding causation.” (Matter of Borenstein v New York City Employees’ Retirement Sys., 88 NY2d 756, 760 [1996].)
In the instant case, the Medical Board determined that the petitioner is disabled. Thus, the only question before the Board of Trustees was that of causation. In determining this question:
“[the board of trustees] is not bound by the medical board’s determination that said disability resulted from a service-related accident. The function and duty of determining the ‘circumstances’ of the disqualification and of determining the amount of the allowance as provided by the code is conferred upon the board of trustees. Ordinarily, the decision of the board of trustees as to the cause of an officer’s disability will not be disturbed unless its factual findings are not supported by substantial evidence or its final determination and ruling is arbitrary and capricious.” (Matter of Canfora v Board of Trustees of Police Pension Fund of Police Dept. of City of N.Y., Art. II, 60 NY2d 347, 351 [1983] [citations omitted].)
It is well settled that in an article 78 proceeding the court in reviewing an administrative determination must ascertain whether there was a rational basis and substantial evidence for the action in question, or whether the determination was *1047 arbitrary and capricious (Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222 [1974]; Matter of Deerpark Farms, LLC v Agricultural & Farmland Protection Bd. of Orange County, 70 AD3d 1037 [2d Dept 2010]). An administrative agency’s fact-finding is reviewed by the substantial evidence test and its exercise of discretion is reviewed by the arbitrary and capricious standard (Matter of Pell). “An action is arbitrary and capricious when it is taken without sound basis in reason or regard to the facts” (Matter of Deerpark Farms at 1038, citing Matter of Pell at 231).
Respondents’ “Verified Answer” to the “Verified Petition” in relevant part avers that “10. On February 12, 2009, . . . the Board of Trustees voted to accept the Medical Board’s recommendation and denied [petitioner’s] most recent application for ADR.”
Respondents’ memorandum of law submitted in opposition to the petition states in relevant part that “[o]n February 12, 2009, . . . the Board of Trustees voted to accept the Medical Board’s recommendation and denied petitioner’s most recent application for ADR.”
The aforesaid is a totally inaccurate description of what transpired at the February 12, 2009 meeting of the Board of Trustees, as a reading of the transcribed minutes of the meeting reveals. The only discussion of petitioner’s case was the comment that, at its previous meeting on November 13th, “The case was laid over pending receipt of additional medical records.” There was not, in fact, any vote by the Board of Trustees on petitioner’s request for an “accident disability retirement” pension.
It is well-settled that courts may not substitute their own judgment for that of administrative bodies (Matter of Santoro v Board of Trustees of N.Y. City Fire Dept. Art. 1-B Pension Fund, 217 AD2d 660, 660-661 [2d Dept 1995]). Courts must, however, insist that administrative bodies do, in fact, exercise their discretion. Where, as here, an applicant is found disabled, the Board of Trustees is required to make an independent evaluation of causation. By relying without discussion on the Medical Board’s opinion, the Board of Trustees abdicated its responsibility instead of exercising it. This failure to independently consider petitioner’s application means that the decision was made without regard to the facts and is, therefore, arbitrary and capricious.
*1048 Conclusion
Based on the foregoing, the petition is granted to the extent that the Board of Trustees’ determination on February 12, 2009 is annulled and the matter is remanded to the Board of Trustees of the New York City Employees’ Retirement System to make an independent evaluation of whether the petitioner’s disability was a natural and proximate result of an accidental injury received in the “line of duty.”